GERSETA CORPORATION v. MOGI et al.

(Circuit Court of Appeals, Second Circuit. February 7, 1927.)

No. 148.

1. Sales ⬪181(11)—Seller's readiness, ability, and willingness to deliver held established.

On issue as to legal excuse or justification for buyer's repudiation of contracts to purchase silk, evidence as to actual silk seller had on hand, and his ability to deliver promptly goods allocated to contracts and of brands agreed on, *held* to show his readiness, ability, and willingness to deliver.

2. Trial ⬪139(1)—Where verdict contrary to certain evidentiary results would be set aside, directed verdict is proper.

If any verdict contrary to certain evidentiary results would be set aside, a directed verdict is proper.

3. Sales ⬪371—Contract and correspondence held not to make passage of title prerequisite to recovery by sellers for breach.

Contract for sale of silk and correspondence between parties *held* not to make passage of title to buyer prerequisite to recovery by sellers for breach of contract; their possession of goods by delivery date, and readiness, ability, and willingness to deliver according to contract then and thereafter, being sufficient.

4. Sales ⬪62—Contracts of sale of silk held not single and entire, so that recovery for buyer's breach would be precluded by seller's nonperformance of one.

Contracts on different dates to buy aggregate of 55 bales of silk *held* not a single entire contract, precluding recovery for buyer's breach by seller not performing one contract within reasonable time.

**5. Sales ⬡⟺62—Contract held divisible, so as to warrant separate causes of action for buyer's breach, and preclude counterclaim based on seller's inability to deliver all (Personal Property Law N. Y. § 125).**

Contract to buy 20, 10, 30, and 45 bales, respectively, of stated brands of silk, *held* divisible or separable, so as to warrant statement of three causes of action by seller for breach thereof, and preclude counterclaim, under Personal Property Law N. Y. (Laws N. Y. 1911, c. 571) § 125, for difference between amount paid by buyer and reasonable value of number of bales delivered, on ground that seller was not ready, able, and willing to deliver remainder within time required.

**6. Sales ⬡⟺89—Buyer, agreeing that seller need not be ready to deliver until called for, cannot complain of dismissal of counterclaim based on inability and unwillingness to deliver part (Personal Property Law N. Y. § 125).**

Buyer, sued for breach of contract to purchase stipulated quantities of certain brands of silk, could not complain of dismissal of counterclaim, under Personal Property Law N. Y. (Laws N. Y. 1911, c. 571) § 125, for difference between amount paid for, and reasonable value of number of bales of one brand delivered by seller, not ready, able, and willing to deliver remainder within time required, where buyer agreed that seller need not be ready to deliver until buyer called for delivery.

In Error to the District Court of the United States for the Southern District of New York.

Action by Sobei Mogi and another, copartners, etc., and others, against the Gerseta Corporation. Judgment for plaintiffs, and defendant brings error. Affirmed.

Plaintiffs below (hereinafter called Mogi) by six separate written contracts (here directly involved) agreed to sell, and defendant below (hereinafter called Gerseta) agreed to buy, certain bales of raw silk. The contract writings were in a set form, and all were specifically subject to the rules of the "Silk Association of America." The rule most obviously relevant is the following:

"Seller should notify buyer of readiness to deliver in accordance with contract terms of delivery, and buyer is under equal obligation to call for silk when due him, but inadvertent failure of either party to tender or call for delivery shall not void contract where readiness to deliver can be proved."

The written agreements were made at divers times between May, 1919, and the following January, and in each case specified times of delivery, the earliest being "5 bales weekly, beginning August 15, 1919," and the latest (in the original contracts) April, 1920, but by admitted agreement the time for a portion of the deliveries under each of two contracts was changed to August and September, 1920, respectively.

Admittedly Mogi was never under obligation to deliver silk at Gerseta's place of business; delivery under the silk rule and trade custom consisted in delivery of papers which enabled a buyer to get the silk out of warehouse.

On May 24, 1920, Mogi was holding in warehouse subject to Gerseta's call silk under the contracts here directly in issue, and other contracts not involved on this writ, worth at contract prices nearly a quarter million dollars; but the market had fallen off about the date of the latest Mogi-Gerseta contract, had continued to fall, and by June, 1920, had fallen catastrophically. Some testimony puts the decrease at over 60 per cent.

Substantially no attention at all was paid by Gerseta to the stipulated delivery dates, and on March 3, 1920, Mogi wrote, complaining that, notwithstanding the regulations of the Silk Association, "it has gradually become the custom of many importers and dealers to carry such silk (i. e., silk sold for stated deliveries) at the pleasure of buyers, or at least until they actually have wanted it."

Apparently the nearest approach to a reply to this was sent by Gerseta on March 30, 1920, as follows:

"Please take note that since several days our two largest mills are out on strike, and we cannot tell at present when it will be settled, owing to the unreasonable demands made; therefore we shall not be able to call for silks on contract as we anticipated."

Mogi seems to have accepted this as a ruling, but on April 26, 1920, wrote again specifying the silks held for Gerseta's account, which "should have been taken by you some time ago," and asking that "you kindly favor us with shipping instructions by return mail, or allow us to bill the silk up to you next week."

To this Gerseta paid no attention until May 24th, when (as subsequently appeared), having found a customer for 55 bales of a brand known as Sin Shu, it called for that amount.

On this date the facts about Sin Shu were these: By contract No. 709, dated May 12, 1919, Gerseta had agreed to buy 30 bales, deliverable 5 bales weekly beginning August 15, 1919; it had taken and paid for 20 bales only, leaving 10 bales long since due, but undemanded. By contract No. 785, dated July 2, 1919, Gerseta had agreed to buy 30 bales, deliverable October–November, 1919. None had ever been demanded, though nearly six months had elapsed since latest stipulated

delivery. By contract No. 805, dated July 24, 1919, Gerseta had agreed to buy 15 bales deliverable December, 1919. None had ever been demanded.

Thus on these three separate contracts Gerseta had good right to demand 55 bales. Mogi had that number of bales of Sin Shu in store, but 20 of the 30 bales held under contract 785 were subject to a lien, or were primarily subject to the control of the Guaranty Trust Company, which had financed the importation by Mogi. It was enormously to the advantage of every one to sell these 30 bales in May, 1920, at the price of July, 1919; but some one blundered, and though Mogi delivered promptly 10 bales under contract 709, 10 under 785, and 15 under 895, there was such delay in getting action by Guaranty Company as to the remaining 20 that on June 3d Gerseta returned the papers covering the 35 bales, and refused to take any silk under these three contracts, and in writing assigned as reason for refusal that, if it could not promptly get 55 bales, it would take none.

On the same June 3d, Gerseta in writing repudiated every other outstanding silk contract it had with Mogi, specifying as grounds "partial and total nonarrival of silk and lack of proper notification and readiness, and failure and inability to deliver same as the case may be."

The contracts thus repudiated were as follows: No. 934, dated November 3, 1919, covering 20 bales Argus, deliverable by agreed change of date in August, 1920, and 30 bales Snow Hill, deliverable April–May, 1920, of which only 15 had been demanded, and those had been delivered and paid for; No. 962, dated November 17, 1919, covering 30 bales Red Pegasus, deliverable February–March, 1920, of which none had been demanded; and 10 bales Y. C. T., deliverable same times, all of which had been demanded and delivered; No. 996, dated December 17, 1919, covering 20 bales extra and 10 bales fair extra, deliverable February–March, 1920, of which none had been demanded, except 3 bales of fair extra, which had been duly delivered. No. 1044, dated January 5, 1920, covered several separate transactions, viz.: 20 bales Gold Mountain, deliverable February–March–April, upon arrival, all of which had been demanded and delivered; also 10 bales Double Phœnix and 30 bales Buffalo, same delivery dates, of which none had been demanded, and 45 bales Yuen Shi Kai, originally deliverable on same dates as the rest of this order, but as to 30 bales delivery date had been by agreement changed to September, 1920, and of the other 15 delivery had been demanded and made, of 5 bales only.

It is impossible to consider the foregoing uncontroverted facts, in the light of testimony regarding trade conditions in June, 1920, without perceiving and believing that Gerseta, discovering through the 55-bale transaction in Sin Shu that Mogi's silk was subject to bankers' liens or claims, or possibly ownership, guessing that Mogi was in financial straits, and knowing that there was no profit in the summer of 1920 in silk at 1919 prices, canceled, as did so many others at that time, on the chance that paying damages in the future would be cheaper than presently keeping contracts.

That view of the future was quite correct. Mogi was in financial difficulties; receivers were appointed for the partnership, and these receivers are parties plaintiff in this action, though their presence does not affect the legal questions here presented. Further, the judgment here complained of is for less than half the value at contract prices of the silk held for Gerseta by Mogi on May 24, 1920.

This result was thus reached. The complaint states 13 causes of action. As to 3, for the price of certain samples sold and delivered to Gerseta, the latter admitted judgment. One plaintiff withdrew, and Gerseta had verdict and judgment on a counterclaim. Three causes of action relate to the Sin Shu silk above described. Mogi had a directed judgment for the 20 bales covered by contract 709. Gerseta had a similar judgment as to the 30 bales covered by contract 785, and Mogi the like as to the 15 bales of contract 805. Contracts 934, 962, and 996 each gave rise to one cause of action, and Mogi had judgment on all.

Contract 1044 was the basis of the remaining three causes of action, one counting on the refusal to take the Double Phœnix, one on the similar refusal as to Buffalo, and one on the refusal as to the undelivered balance of Yuen Shi Kai. The Gold Mountain, having been delivered and paid for, was not the subject of suit. Gerseta had judgment as to Double Phœnix and Buffalo, and Mogi as to the 30 bales Yuen Shi Kai, delivery of which had been postponed to September; as to the remainder, judgment for Gerseta.

Mogi took no writ. Gerseta did, and now complains (1) that Mogi had judgment for anything more than the amounts awarded on the three causes of action as to which defense was abandoned; and (2) that the trial court dismissed certain counterclaims the nature of which will be stated in the opinion.

Hays, Podell & Shulman, of New York City (Jacob J. Podell, Mortimer Hays, and Herman Shulman, all of New York City, of counsel), for plaintiff in error.

Winthrop & Stimson, of New York City (Allen T. Klots and Arthur E. Pettit, both of New York City, and William C. Chandler, of counsel), for defendants in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The scheme of pleadings and some uncontradicted facts have been set out at some length, because we think that background, with some holdings by us on the force and effect of the evidence, will avoid discussion of several legal points.

[1] The vital question is whether Gerseta showed legal excuse or justification for its repudiation of contracts made on June 3d. At that date Mogi had in New York City and in warehouse silk of the brands and in the amounts that Gerseta should have taken, had it observed the delivery dates originally agreed upon. The Argus of contract 934 (or that substituted for it) was not deliverable until August, and 30 bales of the Yuen Shi Kai of contract 1044 not until September, so that Gerseta had no cause of complaint on that head.

Mogi's readiness to deliver was not prevented or hindered by any bank title or liens other than that of Guaranty Company as to 20 bales Sin Shu under contract 785. It is true that much, if not most, of the silk held for Gerseta, had come into the country under bills of lading controlled by, if not to the order of, the Yokohama Specie Bank; but that institution, by a system of trust receipts and standing orders on the warehousemen (too familiar to need description), had enabled Mogi to sell and deliver the silk with perfect freedom, so far as buyers were concerned. As long as Gerseta could get what it had bargained for when entitled to it, the relations between Mogi and the bank were irrelevant. This situation was clearly proved.

The quality of the silk was sufficiently evidenced by showing with no contradiction that it was of known brands, and that those brands import, and are known in the trade to import, silk of the quality signified by the brand name. The goods were bought by the names, and quality was not questioned by the terms of the letters of repudiation. It was made entirely clear that Gerseta did not object to quality, and gave no evidence of poor quality; it did not want to pay the prices agreed on

before the price collapse. There was nothing on this point for the jury.

It may be considered as proven that in many, if not most, instances Mogi did not notify Gerseta, when delivery dates arrived, that it was ready to deliver, but neither did Gerseta call for the silk due. While time in commercial contracts is usually of the essence, we think it here plainly proven and uncontradicted that by agreement in this matter time of notification was not of the essence. This result is aided by considering the rule of the Silk Association above quoted. Indeed, we go further and hold that by the letters written by Gerseta it requested and obtained from Mogi the privilege of having the silk stored until it was wanted. There was no just cause of cancellation under this head. This arrangement was not extraordinary, because by the contract terms Gerseta agreed to pay interest on purchase price.

The evidence is clear and uncontradicted that the silk was timely in New York; the testimony from the warehouse is full on this point. So, also, is the evidence that silk of proper brands was allotted to these contracts; such allotment was on the books of Mogi.

The points now enumerated (i. e., actual silk on hand; ability to deliver promptly goods allocated to these contracts and of the quality [i. e., brands] agreed on) show that as to all the silk as to which Mogi had judgment, and for which the delivery dates were past on June 3, 1920, there was readiness, ability, and willingness to deliver. As to the goods to be delivered in August and September, 1920, we think the proof too clear to require comment.

[2] Observing that questions of value and amount of damages were submitted to the jury, we see no error in directing verdicts in respect of matters thus far treated. The rule is that, if *any* verdict contrary to the evidentiary results above indicated must have been set aside, a directed verdict is proper. Such was the case here.

Having now held that there was no evidence requiring jury submission of the question of fact whether Mogi was ready, able, and willing to perform, we consider some questions of law.

[3] It is urged, in substance, that it was a prerequisite to recovery by plaintiffs below that the title to the silk should, as between the parties, have passed to Gerseta, semble by allocation of goods and notice thereof to the buyer.

It is enough to say that we discover no words in contract or correspondence indicating any intent to do or require this. It satis-

fied the agreement of parties that Mogi had the goods by delivery date, and was then and thereafter ready, able, and willing to deliver according to contract.

[4] Next is urged the assertion that in some way, by virtue of some talks before or on May 24, 1920, the 55-bale transaction should be regarded, or a jury might have found it to be, a single entire contract, which in its entirety Mogi could not perform, and therefore could not recover on any of contracts 709, 785, and 805. We think there is no evidence showing a new or different contract; the original written agreements were separate contracts, containing independent promises. On May 24 Gerseta called on Mogi to complete or fulfill all three; as to two of them full performance was made, and judgment went for Mogi; as to the other, performance was not made within a reasonable time, and judgment went against the seller. This was right.

[5] The causes of action based on contract 1044 raise the last question in this case. Plaintiff in error objects to the stating of three causes of action based on this contract; but, since the document contains several independent promises to buy separate and different kinds of goods at differing prices, we think the procedure right. The contract was divisible or separable. Williston, Contracts, § 871.

By insisting erroneously on the entirety of contract 1044, Gerseta seeks to justify a counterclaim, dismissed below, which is as follows: Agreement was to buy 105 bales of silk; i. e., the aggregate of Gold Mountain, Double Phœnix, Buffalo, and Yuen Shi Kai. Gerseta took and paid for 25 bales; then Mogi was not ready, able and willing to deliver *all* of the remaining 80—i. e., as to 10 Double Phœnix, 30 Buffalo, and 10 Yuen Shi Kai there was no timely allocation of silk to Gerseta's contracts within the original delivery periods; wherefore, under section 125 of Personal Property Law of New York (Laws N. Y. 1911, c. 571), Gerseta, not being liable to pay for the undelivered balance, can recover from Mogi the difference between what it paid under the contract and the reasonable value of the said 25 bales, (semble) at the time of such payment. On a market falling so rapidly as was that for silk in 1920, the difference between reasonable—i. e., market—value and cost price was very substantial. The interpretation of the statute relied on is set forth in Guaranty Co. v. Gerseta, 212 App. Div. 76, 208 N. Y. S. 270.

[6] In its entirety this counterclaim cannot be approved, because it seeks to treat contract 1044 as entire; but, as the greater includes the less, it did present the question whether, since the trial court gave judgment for defendant as to the 10 bales of Yuen Shi Kai, defendant was or was not entitled to recover the difference between the contract price and reasonable value of the 5 bales of that brand delivered and paid for.

We think that to this extent defendant below was entitled to be heard, yet we do not find it necessary to consider the interpretation of section 125 of the Personal Property Law (Laws 1911 N. Y. c. 571); for, admitting arguendo that, if defendant was entitled to judgment as to the 10 bales, it was entitled to counterclaim as to the 5, the question remains whether the judgment for defendant as to the 10 was right. The point is necessarily involved in and by this writ, which attacks the propriety of dismissing the counterclaim.

We think that the proof was full that the correspondence between the parties, first above alluded to, proved that Gerseta had agreed that Mogi need not be ready to deliver the 10 bales until the buyer called for it; wherefore plaintiff below, and not Gerseta, should have had judgment as to the 10. If this be so, plaintiff in error cannot complain; indeed, it escaped with a smaller judgment than should have been awarded.

Finally, we find no error in the allowance of interest, a subject which has received so much and so recent attention in this court that we need not dwell upon it.

Judgment affirmed, with costs.